John E. Frankel and Carole Frankel v. Commissioner.
Frankel v. Commissioner
Docket No. 3578-67.
United States Tax Court
T.C. Memo 1968-168; 1968 Tax Ct. Memo LEXIS 134; 27 T.C.M. (CCH) 817; T.C.M. (RIA) 68168; July 31, 1968. Filed Norman T. Tischler, for the petitioner. J. Edward Friedland, for the respondent. 818 SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1964 in the amount of $297.69. The only issue for decision is whether petitioners are entitled to deduct unreimbursed automobile expenses of $1,368.75 or any part thereof in addition to the $918.75 of their claimed deduction for automobile expenses which was allowed by respondent. Findings of Fact Some of the facts have been stipulated and are found accordingly. John E. Frankel and Carole Frankel, husband and wife who resided at the date the petition in this case was filed at Lakewood, Ohio, filed a joint Federal income tax return for the calendar year 1964 with the district *135 director of internal revenue at Cleveland, Ohio. John E. Frankel (hereinafter referred to as petitioner) resided during the entire calendar year 1964 in Shaker Heights, Ohio. Petitioner and Carole were married on March 14, 1964. Prior to their marriage Carole resided in Lyndhurst, Ohio, approximately 4 miles from where petitioner lived in Sharker Heights, Ohio, and after their marriage she resided in Shaker Heights, Ohio at the same place where petitioner had resided before their marriage. In August of 1959 petitioner became employed as a solicitor for the insurance firm of Frankel Brothers Insurance Agency. From the date of his original employment throughout the year 1964 and through the time of the trial in this case petitioner was so employed. Petitioner's father and his uncle and two other persons not related to petitioner are the four partners of the Frankel Brothers Insurance Agency. The four partners are insurance agents, and petitioner and from nine to ten other individuals are solicitors. During the year 1964 petitioner's work consisted of selling fire, casualty, including automobile, and liability insurance. He was compensated on a commission and salary basis. Since *136 1964 petitioner has been selling life insurance also and he no longer receives a salary but his only compensation is by commissions. During the year 1964 petitioner's salary from the Frankel Brothers Insurance Agency was between $425 and $450 a month. The total compensation he received for the year 1964 from Frankel Brothers Insurance Agency was $6,969.83. During the year 1964 petitioner's customers were mainly in northern Ohio. Approximately 25 percent of those customers lived within the greater Cleveland area. During 1964 petitioner was attempting to build up his clientele and generally would call on his clients or prospective clients at their homes or places of business. He would call in the evening or on Saturday or Sunday as well as during normal working hours. During 1964 petitioner had approximately 500 clients who had purchased insurance from him. He kept the anmes of these clients and the date of expiration of their insurance policies on cards, arranged in order of the date when the insurance policies would expire. Each card would be placed under a date approximately 6 weeks before the expiration date of the policy. On that date approximately 6 weeks prior to the expiration *137 date of the policy, petitioner would telephone the individual and make an appointment to come by and discuss with him his insurance and the possibility of the need for more insurance coverage. Petitioner kept an appointment book showing the names and addresses of the various clients on whom he called in 1964. Sometimes when petitioner would call on a client, the client would suggest another individual who was in need of insurance or ask that he inspect some property to suggest a reasonable insurance value of that property. Petitioner drove his personally owned automobile which was a 1961 Plymouth on all his visits to his various clients. In addition, petitioner attended various meetings of insurance solicitors or insurance agents and drove his automobile to such meetings. In 1964 he drove to Granville, Ohio to attend a young agents conference and to Columbus, Ohio to the meeting of the Ohio Association of Insurance Agents. He regularly attended committee meetings of the Ohio Association of Insurance Agents in Columbus during the year 1964. Petitioner's office was in downtown, Cleveland, 9 or 10 miles from petitioner's home in Shaker Heights. Generally, on Monday mornings petitioner *138 would go into his office and stay several hours to go over his mail and arrange his schedule for the week. He would then leave the office and spend the rest of the day and into the evening visiting clients. Petitioner generally 819 would not come back to his office until sometime on Wednesday when he would come into the office for about 2 hours sometime during the day. Generally, he would not go into the office on Thursday but would go to the office on Fridays for 3 or 4 hours. Sometimes petitioner would not go directly into his office on Monday but would stop and see various clients on his way into his office. Instead of taking a direct route, he would drive to the Freeway and stop by Lyndhurst, Mayfield Village, Mayfield Heights, or some other suburban village on his way into the office. Sometimes when he left the office he would make similar stops on his way home in the evening. The only pleasure driving which petitioner did outside of the city of Cleveland during the year 1964 was to Snow Mountain, Vermont and Kittery, Maine for a week's vacation, to Boyne Mountain in Michigan where he spent a few days, to Erie, Pennsylvania on four different occasions, and to Seven Springs, *139 Pennsylvania. Petitioner was married on March 14, 1964, and he and his wife drove in his automobile to Snow Mountain, Vermont which is approximately 625 miles from Cleveland and from Snow Mountain drove to Kittery, Maine, a distance of 125 miles and back to Snow Mountain, making a total mileage driven on the trip of approximately 1,500 miles. Boyne Mountain, Michigan is approximately 500 miles from Cleveland, and petitioner drove his automobile approximately 1,000 miles on the trip he took to Boyne Mountain. Erie, Pennsylvania is approximately 100 miles from Cleveland and petitioner drove his automobile approximately 800 miles on his four trips to Erie, Pennsylvania. On his trip to Seven Springs, Pennsylvania petitioner drove his automobile approximately 500 miles since Seven Springs is about 250 miles from Cleveland. The total driving on out-of-town trips for pleasure which petitioner did in 1964 was approximately 3,800 miles. Petitioner's wife, Carole, owned an automobile at the time she and petitioner were married and she kept her automobile throughout the balance of the year 1964. Prior to the time Carole and petitioner were married, Carole was employed as a registered nurse. *140 She was not employed outside of her home after her marriage to petitioner. Petitioner's wife used her automobile for the personal family errands, such as grocery shopping and taking laundry and dry cleaning to be done. Other than out-of-town trips, the only personal use petitioner made of his automobile was using it prior to his marriage to drive to the home of Carole's mother where Carole was then living, a distance of approximately 4 miles from petitioner's residence and to go out to dinner occasionally in the Cleveland area. After petitioner was married he occasionally used his automobile to drive over for a visit with his wife's family in Lyndhurst or to go out to dinner or visit with friends in the Cleveland area. In January 1964 petitioner kept a record of his mileage driven for business. During that month he drove his automobile a total of 3,000 miles, of which 2,600 was business driving, calling on his various clients and attending business meetings. After keeping a record of his mileage for the month of January 1964 petitioner found it so difficult to keep track of all of the business mileage as he visited various clients and went from one place to another that he determined *141 that it was easier to keep track of his personal driving mileage. At the end of 1964 petitioner traded his 1961 Plymounth for a Chrysler automobile on which there was an odometer. At the time petitioner traded his 1961 Plymouth he had driven it 122,000 miles. Petitioner has been keeping track of his business mileage on his new automobile with an odometer since the first of 1965 and he finds that he averages driving from 500 to 600 miles a week for business purposes. Petitioner drove at least as much per week for business purposes in 1964 as he did in 1965 and later years. Petitioner kept an accurate record of the total expenses he incurred in operating his automobile during the year 1964. During that year he kept an accurate record of the total mileage driven in his automobile, and the parties have stipulated that his automobile was driven a total of 35,555 miles during the year 1964. Petitioner received certain reimbursement for garage fees from his employer but was not otherwise reimbursed for his automobile expenses. The parties have agreed that in accordance with respondent's ruling contained in Rev. Proc. 64-10, C.B. 1964-1 (Part 1), 667, petitioner is entitled *142 to compute his deductible automobile business expenses by using a standard mileage rate of 10 cents per mile for the first 15,000 miles driven during the year for business purposes and 7 cents per mile for such mileage in excess of 15,000 miles per year. 820 Petitioner used this standard mileage provided for in respondent's revenue ruling in computing the deduction which he claimed for automobile expense on his 1964 income tax return. He computed the total deduction which he claimed of $2,287.50 on the basis of 26,250 miles. Respondent in his notice of deficiency disallowed $1,368.75 of the claimed deduction on the ground that petitioner had not established that any amount in excess of $918.75 constituted ordinary and necessary business expense. Opinion Respondent in the instant case takes the position that petitioner was obligated to keep records of his business driving, and since he did not respondent's determination should be sustained. He cites in support of his position Boyd Construction Company v. United States, 339 F. 2d 620 (Ct. Cls., 1964), in which the Court stated as follows at 623: The Commissioner disallowed 50 percent of the automobile expense *143 claimed by plaintiff. Under Section 162 of the 1954 Code (and Section 23(a)(1)(A) of the 1939 Code), such expense is deductible where the automobile is used in furtherance of the taxpayer's business, but automobile expense arising from personal use is not deductible. Where the automobile is used for both business and personal purposes, an allocation must be made. Leadbetter v. Commissioner, 39 BTA 629. The determination made by the Commissioner is presumed correct. Welch v. Helvering, 290 U.S. 111, 54 S. Ct. 8, 78 L. Ed. 212; Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L. Ed. 623. The evidence shows that the automobiles in question were used for both personal and company business, but no record was kept as to the amount of mileage for each purpose. In view thereof, it is considered that the determination by the Commissioner must stand. See Cohan v. Commissioner, 2 Cir., 39 F. 2d 540, 543-544. Respondent cites several memorandum opinions of this Court sustaining in part respondent's disallowance of a taxpayer's claimed deduction for automobile expenses because of the taxpayer's failure to prove that he was entitled to the *144 full deduction claimed, or sustaining respondent's determination because the taxpayer offered no evidence to support a deduction greater than that determined by respondent. Respondent is correct, of course, in his contention that his determination is prima facie correct, and the burden is on petitioner to show error in that determination. However, in the instant case respondent is incorrect in his contention that petitioner had no evidence to support his contention for a deduction for automobile business expense substantially in excess of the amount allowed by respondent. Petitioner testified that he had a record of the addresses of his various clients on whom he called and the Roberts, for the respondent. had a record of the business mileage which he drove during one month of the year 1964 and that during that month he drove 2,600 miles for business out of total mileage of 3,000 miles. Petitioner testified that he kept a record of his business driving in the year 1965 and following years and that his business driving in those years averaged 500 to 600 miles per week. He testified that he knew of his personal knowledge that his driving for business purposes was not more in 1965 and *145 later years than in the year 1964. Petitioner kept a record of the total miles he drove in 1964 and the parties have stipulated to this figure. Petitioner's testimony and the various records which he testified he kept support a business mileage driven during 1964 of at least the amount which petitioner claimed on his return. Petitioner has shown that respondent's determination was grossly in error. When a taxpayer has shown error in respondent's determination, that determination ceases to be presumptively correct, and it is necessary for this Court to make a proper determination based on all the evidence of record. The evidence in this record as a whole supports a total of 26,250 miles driven by petitioner for business purposes in 1964 as claimed by petitioner on his Federal income tax return for that year. Since respondent and petitioner do not disagree as to the cost per mile of driving used by petitioner in computing his claimed deduction, our conclusion that petitioner has established that he drove 26,250 miles for business purposes requires that we sustain petitioner with respect to his claimed deduction. Decision will be entered for petitioner. 821